UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ARLEAN BROWN YOUNG,**<br>    Plaintiff,<br><br>v.<br><br>**BANK OF AMERICA, N.A.,**<br>***et al.,***<br>    Defendants. | **Case No. 2:24-cv-919-CLM** |

## MEMORANDUM OPINION

In this residential mortgage case, Plaintiff Arlean Brown Young sues the servicer of her mortgage, Bank of America, N.A., along with the mortgage's assignee, Wells Fargo Bank, N.A., (collectively, "Defendants"), to stop the allegedly wrongful foreclosure of her home. Young claims that Defendants, among other things, initiated foreclosure proceedings on her home in violation of numerous federal statutes and Alabama state law. Defendants now move for summary judgment, arguing that "the undisputed facts, [Young's] own admissions, and applicable law" show they are entitled to judgment as a matter of law. (Doc. 24, p. 8-9). For the reasons stated within, the court will **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment (doc. 23).

## BACKGROUND

Below are the facts in the light most favorable to Young.[1]

---

[1] This court's Initial Order requires the nonmoving party, in its response to a motion for summary judgment, to list in separately numbered paragraphs any disputes it has with the moving party's statement of undisputed facts. (*See* Doc. 14, p. 12). The Initial Order states that "[a]ll material facts set forth in the statement required of the moving party *will be deemed admitted* for summary judgment purposes unless controverted by the response of the party opposing summary judgment." (*Id.*) (emphasis added). Young did not dispute any of Defendants' undisputed facts. With that said, the court has reviewed all of Young's submissions and will not assume any undisputed facts to be admitted if her evidence contradicts them.

### A.     Young Purchases the Property

On November 4, 2004, Young and her late husband purchased real property located at 5616 Canon Gate Lane, Birmingham, Alabama 35242 (the "Property"). To finance their purchase, Young executed an adjustable rate note and borrowed $600,000 from First Franklin Financial Corp., a subsidiary of National City Bank of Indiana. As security for the loan, Young granted First Franklin Financial Corp. a mortgage on the Property.

### B.     Defendants Take Over Young's Mortgage and Young Modifies her Loan

Young's note and mortgage were later assigned to Wells Fargo via an assignment of mortgage on July 1, 2008. A few years later in October 2010, BAC Home Loans Servicing LP took over the servicing of Young's loan. BAC Home Loans Servicing LP merged with Bank of America in 2011, so Bank of America has serviced Young's loan since that time.

In January 2010, Young executed a modification agreement for her mortgage. Young would go on to modify the terms of her mortgage three more times between October 2011 and May 2016. Still, Young fell behind on her payments, so she entered into a payment deferral program with Bank of America in October 2022. Young caught up on her mortgage payments by paying a lump sum in December 2022.

### C.     Young Defaults, Defendants Attempt Foreclosure on the Property

Young once again fell behind on her mortgage payments in March 2023. So Bank of America sent Young a notice of its intent to accelerate her mortgage payments on April 25, 2023. In that notice, Bank of America gave Young until on or before June 4, 2023, to cure her default by paying the $6,093.66 she owed at the time. Young made a partial payment in August 2023, but her loan is still due for its June 1, 2023 payment. Given Young's default, Defendants began foreclosure proceedings on the Property on February 5, 2024.

**D.    Young Sues**

Young filed this lawsuit in the Circuit Court of Shelby County, Alabama, on June 5, 2024. Defendants timely removed the case to this court. Once Young filed her complaint, Defendants halted foreclosure proceedings on the Property. Young continues to reside at the Property, and no foreclosure is currently scheduled.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record showing the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. The burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 325.

When the moving party has carried its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323.

## DISCUSSION

Young pleaded 14 claims in her complaint (*See* doc. 1-1, p. 7-21) but has abandoned six of them at the summary judgment stage (doc. 31, p. 3). The court highlights in green the counts Young contends should survive summary judgment and highlights in red the counts she abandoned:

- Count 1: Negligence;
- Count 2: Wantonness;
- Count 3: Unjust Enrichment;
- Count 4: Wrongful Foreclosure;
- Count 5: Slander of Title;
- Count 6: Breach of Contract;
- Count 7: Fraud;
- Count 8: False Light;
- Count 9: Defamation, Libel, and Slander;
- Count 10: Violation of the Truth-in-Lending Act ("TILA");
- Count 11: Violation of the Real Estate Settlement Procedures Act ("RESPA");
- Count 12: Violation of the Fair Credit Reporting Act ("FCRA");
- Count 13: Violation of the Fair Debt Collection Practices Act ("FDCPA");
- Count 14: Declaratory Relief.

Because Young has abandoned Counts 1, 2, 4, 5, 7, and 8, the court will **GRANT** Defendants' motion for summary judgment on those claims.

Defendants contend they are entitled to summary judgment on the remaining eight counts, so the court addresses each below. But first, the court addresses Defendants' argument that reaches all remaining counts.

## A.   **Defendants' Shotgun Pleading Argument**

Defendants begin their summary judgment motion by arguing that Young's complaint "is an impermissible shotgun pleading that should be dismissed." (Doc. 24, p. 10). According to Defendants, Young's complaint disregards the Eleventh Circuit's rule against shotgun pleadings because it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." (*Id.*). In response, Young contends that her claims against Bank of America and Wells Fargo are "interchangeable" and can be "lumped together" because Bank of America is the mortgage's servicer and acts on behalf of Wells Fargo, the mortgage's assignee. (Doc. 31, p. 4). Young also argues that it's too late for Defendants to raise a shotgun pleading defense now because discovery is complete and Young should receive a chance to amend her complaint before the court could dismiss her claims with prejudice.

The court agrees with Young and declines to dismiss her claims on shotgun pleading grounds. This case has been pending for over a year, and discovery is complete. Defendants had the opportunity to seek dismissal on shotgun pleading grounds or file a motion for a more definite statement. They didn't. Given that Defendants managed to discern Young's complaint well enough to raise defenses to each of her claims in their motion for summary judgment, the court declines to grant summary judgment on shotgun pleading grounds. *See Florida Carry, Inc. v. City of Miami Beach*, 564 F. Supp. 3d 1213, 1223 n. 9 (S.D. Fla. 2021) (declining to require a plaintiff to amend their complaint on shotgun pleading grounds at the summary judgment stage because discovery was complete and dispositive motions were ready for adjudication).

### B.     Unjust Enrichment (Count 3)

Starting with her first unabandoned claim, Young alleges in Count 3 that Defendants' attempted foreclosure of the Property "resulted in Defendants being unjustly enriched by the payment of fees, insurance proceeds, and equity in the home." (Doc. 1-1, p. 9). Defendants argue they are entitled to summary judgment on this claim because Alabama law does not recognize a claim for unjust enrichment when there is an express written contract that governs the rights and obligations of the parties, as in this case, the adjustable rate note and mortgage.

Defendants are correct. Alabama law does not recognize unjust enrichment when there is a contract between the parties governing the same subject matter. *Jackson v. Bank of New York Mellon*, 2016 WL 4942085, at *5 (S.D. Ala. July 19, 2016) (citing *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996)); *see also Selman v. CitiMortgage, Inc.*, 2013 WL 838193, at *13 (S.D. Ala. Mar. 5, 2013) ("under Alabama law … express written agreements concerning the same subject matter as the implicit contract underlying the … unjust enrichment cause of action are fatal to that cause of action, as a matter of law"). Given this principle, federal courts in Alabama routinely hold that a borrower's unjust enrichment claim against a mortgagee or servicer fails if it is based on the collection of payments and fees under a note and mortgage. *See, e.g.*, *Jackson*, 2016 WL 4942085, at *5; *Fed. Home Loan Mortgage v. JPMorgan Case Bank NC*, 2014 WL 3889472, at *11 (N.D. Ala. Aug. 5, 2014) (citing *Kennedy*, 682 So.2d at 447).

Here, Young and Defendants' relationship, as it relates to the mortgage that enabled Young to buy the Property, is governed by the adjustable rate note that Young signed. That note outlines the applicable terms if Young fails to pay as required. (*See* doc. 23-4, p. 3). Because a contract governs the same subject matter as the implicit contract underlying Young's unjust enrichment claim, the doctrine of unjust enrichment is inapplicable. So the court will **GRANT** Defendants' motion for summary judgment on Count 3.

## C. Breach of Contract (Count 6)

In Count 6, Young alleges breach of contract. Young contends that Defendants breached paragraph 2 of the mortgage agreement by failing to apply certain payments Young made. Young further claims that Defendants breached paragraph 22 of the agreement by failing to give proper notice of their intent to accelerate the remaining amount owed on the mortgage.

Under Alabama law, the elements of a breach of contract claim are: (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's non-performance; and (4) resulting damages. *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (citing *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)). If a plaintiff fails to perform as element two requires, then their breach of contract claim must fail. *See Winkleblack v. Murphy*, 811 So. 2d 521, 529 (Ala. 1988) ("in order to establish that a defendant is liable for a breach of a bilateral contract, a plaintiff must establish that he has performed, or that he is ready, willing, and able to perform under the contract.").

The undisputed evidence, including Young's own testimony, shows that Young has failed to make mortgage payments since August 2023 and is in default. (*See* doc. 23-2, 23-15, p. 1-6). Failure to pay is a material breach of the mortgage agreement, meaning the Young hasn't performed as required. *See Sokol v. Bruno's, Inc.*, 527 So. 2d 1245, 1247-48 (Ala. 1988) ("A material breach [of a contract] is one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract."). For that reason, the court will **GRANT** Defendants' motion for summary judgment on Count 6.

## D. Defamation, Libel, and Slander (Count 9)

In Count 9, Young brings claims for defamation, libel, and slander. Young asserts that Defendants willfully, wantonly, recklessly, and/or maliciously published and communicated false and defamatory statements about her, causing her harm. Young claims that the allegedly

defamatory statements were published in the *Alabama Messenger* and further communicated to credit reporting agencies. While Young does not identify specific statements that were allegedly defamatory, slanderous, or libelous, her complaint suggests that (1) the foreclosure sale notices, which stated that Young's loan was in default, and (2) the reports to credit reporting agencies that Young had defaulted, form the basis of her claims. Young's brief in opposition to the motion for summary judgment appears to confirm that these are the allegedly false statements at issue. (*See* doc. 31, p. 40-41).

Under Alabama law, the elements for defamation are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting at least to negligence; and (4) either actionability of the statement irresponsive of the special harm, or the existence of special harm caused by the publication of the statement. *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 3d 833, 840 (Ala. 2003) (citing *McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 877 (Ala. 1989)). Truth is an absolute defense to defamation. *Wal-Mart Stores*, 872 So. 2d at 840 (citing *Foley v. State Farm Fire & Cas. Ins.*, 491 So. 2d 934, 937 (Ala. 1986)).

Young's defamation claim stumbles out of the gate because nothing in the record supports her contention that Defendants made a "false statement" about her or her debt. Young alleges that the defamatory statements are (1) the foreclosure sale notices, which stated that her loan was in default, and (2) Defendants' reports regarding Young's default to credit reporting agencies. In other words, the allegedly false statement, according to Young, is that she was in default.

But the undisputed facts *confirm* that Young is in default. (*See* doc. 23-15, p. 5). In fact, Young admitted during her deposition that she is behind on her payments and last made a partial payment in August 2023 that did not bring her loan current. (*See* doc. 23-15, p. 60, 86).

To sidestep this obvious point, Young falls back to arguing sufficient pleading under Rule 12, not summary judgment under Rule 56:

8

> It is clear from the amended complaint that the Plaintiff *alleges* that she was not in default in making her mortgage payments and that Defendant repeatedly published a notice in the newspaper which claimed that the Plaintiff was in default in making her mortgage payments and that Defendant was conducting a foreclosure sale as a result of Plaintiff's alleged default on the mortgage debt. Accordingly, Plaintiff has *alleged* a false statement which was published in a newspaper of general circulation. By publishing it in the Newspaper, it is obvious that the false statement was communicated by Defendants to third parties. *Accordingly, the Plaintiff has met all the elements of her claims for libel, slander, and defamation.*

(Doc. 31, p. 40-41) (emphasis added). In short, Young argues that because she "alleged" a false statement to a third party, her claims should survive summary judgment without evidence of the false statement. Of course, that's not how the rules work. To survive a Rule 56 motion for summary judgment, Young must present evidence—not just allegations. *See Miles v. Celadon Group, Inc.*, 382 F. Supp. 3d 1246, 1248 (N.D. Ala. 2019) (citing *Celotex*, 477 U.S. at 324) ("The non-moving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.").

Because Young fails to produce any evidence that would allow a reasonable juror to find that Defendants made a false statement about Young, the court will **GRANT** Defendants' motion for summary judgment on Count 9.

### E.   Truth-in-Lending Act (Count 10)

Next, Young brings a Truth-in-Lending ("TILA") claim in Count 10. Young contends that Defendants violated the TILA and Federal Reserve Board Regulation Z, 12 C.F.R. § 2226 (a regulation promulgated under the TILA) by, among other things, "improperly amortizing" her mortgage, failing to provide proper disclosures, and failing to send proper monthly

9

statements. (Doc. 1-1, p. 16). Defendants argue they are entitled to summary judgment on Young's TILA claim because (1) they are not "creditors" under the statute and (2) the claim is barred by the applicable statute of limitations. (*See* doc. 24, p. 25-26). Defendants are again correct.

Congress designed the TILA to "assure a meaningful disclosure of credit terms so that [consumers] will be able to compare more readily the various credit terms available to [them] and avoid the uninformed use of credit, and to protect [consumers] against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). To carry out that design, the TILA gives consumers a private right of action against "any creditor who fails to comply" with the statute. 15 U.S.C. § 1604(a). But by its plain language, the TILA's private right of action applies only to claims against "creditors." *See* 15 U.S.C. § 1604(a). The TILA defines a "creditor" as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, *and* (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g).

Neither Defendant is a "creditor" under the statute. As discussed above, a "creditor" is "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness …" 15 U.S.C. § 1602(g). The face of the mortgage and note show that Young's loan was initially payable to "First Franklin Financial Corp." (*See* docs. 23-4, 23-5). Because neither Defendant is the original lender, neither Defendant is subject to TILA liability. *See Jackson*, 2016 WL 4942085, at *12 (dismissing a TILA claim against a mortgage servicer because it "was not the original lender on Plaintiffs' Mortgage and/or Note").

In her response, Young cites *Kahn v. Bank of New York Mellon*, where a court determined that a creditor could be held vicariously liable

10

under the TILA for its servicer's statutory violation. 849 F. Supp. 2d 1377, 1382 (S.D. Fla. 2012). Relying on that case, Young argues that Wells Fargo can be held liable for Bank of America's TILA violations as a servicer. But that's wrong. Young has not asserted a TILA claim against a creditor for the actions of a servicer. Again, Wells Fargo isn't a creditor under the TILA because it isn't the original lender. So even if Bank of America violated the TILA as a servicer, *Kahn's* logic does not cover Young's claim where no Defendant is a "creditor."

Because neither Defendant is a "creditor" under the TILA, Young's claim in Count 10 fails and the court need not reach the statute of limitations issue. The court will **GRANT** Defendants' motion for summary judgment on Count 10.

### F. Real Estate Settlement Procedures Act (Count 11)

In Count 11, Young alleges that Defendants violated the Real Estate Settlement Procedures Act ("RESPA") "by failing to acknowledge or respond to Young's Qualified Written Request ("QWR")" within the time allowed by the statute. (Doc. 1-1, p. 17). Specifically, Young alleged in her complaint that she emailed Defendants two QWRs—one on "December 12, 2023," and the other on "April 16, 2024." (Doc. 1-1, ¶ 92). Young alleged that Defendants failed to acknowledge or respond to these QWRs in violation of RESPA and the Dodd-Frank Act. (*Id.*). According to Young, Defendants' failure to acknowledge and respond to the QWRs damaged Young because she could not receive information about her loan and "stop the foreclosure on her home." (*Id.*).

Defendants argue that they are entitled to summary judgment because Young has no evidence that she sent Defendants QWRs in December 2023 or April 2024, and even if she had, she has not shown actual damages as RESPA requires because no foreclosure sale occurred. The court agrees on both counts, and each serves as an independent basis for summary judgment.

11

1. *No evidence of alleged QWRs*: Young *pleaded* that she sent Defendants the actionable QWRs on "December 12, 2023" and "April 16, 2024." (Doc. 1-1, ¶ 92). But Young did not attach those QWRs to her complaint, and Defendants maintain that she did not produce them during discovery.

Young responds by saying that "Defendants inexplicably claim they never received any QWR or notice[s] of errors or other similar communications from Young. The attached documents clearly show that to be false." (Doc. 31, p. 34). The attached documents, however, are not Young's alleged QWRs from December 2023 and April 2024. Instead, Young attaches a July 23, 2024 email from her attorney (Kenneth Lay) to Defendants' attorney (Jon Patterson) that attaches a copy of a QWR that Attorney Lay said he mailed the day before, July 22, 2024. (Doc. 31-1, p. 13). Young also attaches a QWR that Attorney Lay purportedly wrote on May 15, 2024, (doc. 31-1, p. 15), and her own affidavit that says she instructed Attorney Lay to send these QWRs on the dates contained on the letters: May 15, 2024 and July 22, 2024.

But these are not the QWRs Young pleaded in her complaint, so Defendants did not have notice that Young's claims stemmed from these QWRs. Plus, Attorney Lay wrote the first QWR less than 30 days before suing Defendants and the second QWR (the one he emailed counsel) more than a month into the litigation—*i.e.*, after Young alleged that Defendants had ignored her QWRs. So Young did not give Defendants 30 days (excluding holidays and weekends) to react to either of the only QWRs she provides the court. *See* 12 U.S.C. § 2605(e)(2). In fact, the evidence suggests that Attorney Lay took it upon himself to write and email the QWRs, as Young seemed to have no idea what a QWR was when asked during her deposition:

> **Q:** Did you ever send what's called a Qualified Written Request to the bank?
>
> **A:** What is that?

> **Q:** It would just be a letter likely drafted by your attorney around December 2023. And it may have been drafted by your attorney on your behalf, but do you recall sending any letters to the bank in December 2023? Just you personally.
>
> …
>
> **A:** I don't know.

(Doc. 23-15, p. 24).

In short, Young provides no evidence that would allow a reasonable juror to find that Young sent Defendants QWRs on "December 12, 2023" and "April 16, 2024" and that Defendants failed to respond within the statutorily mandated time. (*See* Doc. 1-1, ¶ 92). Young instead provides evidence of a different, un-pleaded claim that Defendants had no opportunity to subject to discovery and dispute—*i.e.*, that Defendants failed to act on counsel's QWRs while this case was pending. But Young cannot amend her claim in her response to a motion for summary judgment. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). The court thus agrees with Defendants that they are entitled to summary judgment for failure to provide evidence that Defendants failed to timely respond to the pleaded QWRs.

2. *Damages*: The court also finds that Defendants are entitled to summary judgment because Young produces no evidence that would allow a juror to find that Defendants' failure to respond damaged Young. "Damages are an essential element of a RESPA claim." *Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 982 (11th Cir. 2017). In *Baez*, the Eleventh Circuit declined to decide whether RESPA plaintiffs can recover non-pecuniary losses, but it made clear that claimed damages must be a "a result of" a servicer's noncompliance with RESPA. *Id.* And "[f]or actual damages to be 'a result of' a servicer's noncompliance, the 'plaintiff must present evidence to establish a causal link between the [servicer's] noncompliance and [her] damages.'" *Id.* (citing *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1027-28 (11th Cir. 2001) (en banc)).

13

In her complaint, Young claims that Defendants' failure to acknowledge and respond to the QWRs caused her damage because "she was not able to stop the foreclosure on their [sic] home." (Doc. 1-1, p. 17). But it is undisputed that Defendants did not foreclose on her home, nor was one scheduled at the time the parties briefed this issue. (*See* doc. 23-2, p. 6). So the court must assume that no foreclosure has occurred.

That leaves Young with, at best, "non-pecuniary" damages because of an "attempted foreclosure" of the Property. But the court is not convinced that an "attempted foreclosure" counts as actual damages under RESPA. *See Baez*, 709 F. App'x at 982 (declining to decide the precise scope of actual damages under RESPA). In any event, Young cannot trace her claimed damages to Defendants' alleged RESPA violations because of the timing of her QWRs. Remember, there is no evidence that Young sent QWRs *before* Defendants attempted to foreclose on Young's property in February 2024. (*See* doc. 1-1, p. 4-5). Instead, the evidence shows that Young's counsel sent Defendants the QWRs in May 2024 and July 2024—and Young seemed to have no knowledge of counsel's QWR submissions when questioned, much less an explanation how she was hurt because of Defendants failure to respond. In short, Young cannot connect for a juror (a) Defendants' failure to respond to QWRs and (b) their attempted foreclosure of Young's property.

—

For both reasons independently, the court will **GRANT** Defendants' motion for summary judgment on Count 11.

### G.   Fair Credit Reporting Act (Count 12)

In Count 12, Young alleges that Defendants violated the Fair Credit Reporting Act ("FCRA") by inaccurately reporting that she was delinquent in her mortgage loan and in default. Young contends that she "repeatedly contacted Defendants from September 2023 until May 2024" regarding their inaccurate reporting and that she "contacted the credit national bureaus and informed them of the inaccurate information and disputed

same." (Doc. 1-1, p. 17-18). According to Young, Defendants failed to act, "causing credit denials and other damages." (Doc. 1-1, p. 18).

"The FCRA imposes two separate duties on furnishers. First, [15 U.S.C.] § 1681s-2(a) requires furnishers to submit accurate information to [credit reporting agencies]. Second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of [consumer] disputes." *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). The FCRA "explicitly bars private suits for violations of § 1681s-2(a)," but permits them for violations of § 1681s-2(b) "if the furnisher received notice of the consumer's dispute from a consumer reporting agency.*" Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009).

Defendants argue that they are entitled to summary judgment on Young's FCRA claim because (1) Young cannot sustain a cause of action related to Defendants' alleged inaccurate reporting under § 1681s-2(a) and (2) Young cannot make a § 1681s-2(b) claim because she failed to dispute her credit information with a consumer reporting agency. Defendants are right.

First, the FRCA's plain language in § 1681s-2(a) "explicitly bars private suits" for any inaccurate reporting by Defendants, so Young cannot sustain a claim under that section. *See Green*, 288 F. App'x at 386. Second, Young cannot sustain a claim under § 1681s-2(b) either because the evidence before the court shows that she didn't dispute her credit information with a consumer reporting agency. *See Chipka v. Bank of Am., NA*, 355 F. App'x 380, 383 (11th Cir. 2009) (stating that the private right of action under § 1681s-2(b) only applies to a furnisher "when notified by a consumer reporting agency of a credit-report dispute"). Indeed, when Young was asked during her deposition whether she ever contacted a national credit bureau, she stated unequivocally that she had not. (*See* doc. 23-15, p. 23). And in her response to the motion for summary judgment, Young provided no contrary evidence showing that she did contact a consumer reporting agency.

15

Because Young cannot sustain a cause of action under § 1681s-2(a) and she failed to dispute her credit information with a consumer reporting agency as § 1681s-2(b) requires, the court will **GRANT** Defendants' motion for summary judgment on Young's FCRA claims in Count 12.

### H.     Fair Debt Collection Practices Act (Count 13)

Young alleges in Count 13 that Defendants violated numerous provisions of the FDCPA within the last twelve months by (1) attempting to collect amounts not owed under Young's mortgage contract; (2) threatening unpermitted legal action; (3) communicating with third parties about Young's debts; (4) failing to identify themselves as debt collectors in communications with Young; and (5) falsely stating the amount of debt Young owed. (*See* doc. 1-1, p. 20).

Defendants move for summary judgment only on the ground that Young's FDCPA claim fails to "meet even basic pleading standards." (*See* doc. 24, p. 30-31). As discussed above, the court declines to grant Defendants summary judgment on shotgun pleading grounds. Moreover, the court cannot consider Defendants' additional argument regarding Young's default on her mortgage because it was raised for the first time in Defendants' reply brief. As a result, the court has been presented with no argument that shows Defendants are entitled to judgment as a matter of law, as required by Rule 56(a). The court will therefore **DENY** Defendants' motion for summary judgment on Count 13.

### I.     Declaratory Relief (Count 14)

Young asks for declaratory relief in Count 14. She seeks an order that (1) states she is not in default on her mortgage, (2) affirms Defendants have no right to foreclose on her property, and (3) prohibits Defendants from foreclosing on the Property.

As discussed, the undisputed facts confirm that Young was (and currently is) in default because her June 1, 2023 payment is due and owing. (*See* doc. 23-2, p. 5; doc. 23-15, p. 86). Young offers no evidence to substantiate her allegations to the contrary, so she is not entitled to the

declaratory relief she seeks. The court will **GRANT** Defendants' motion for summary judgment on Count 14.

## CONCLUSION

For the reasons explained above, the court will **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment. The court **GRANTS** Defendants' motion for summary judgment on Counts 1-12 and Count 14 and **DISMISSES** those claims **WITH PREJUDICE**. But the court **DENIES** Defendants' motion for summary judgment on Count 13. Young's FDCPA claims in Count 13 will proceed to trial.

**DONE** and **ORDERED** on December 29, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE